UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10215-GAO

CARLTON BUSCEMI,
Plaintiff,

v.

INDOCHINO APPAREL (U.S.), INC.,
Defendant.

OPINION AND ORDER
September 28, 2026

O'TOOLE, D.J.

In this diversity action removed from the Massachusetts Superior Court, plaintiff Carlton Buscemi claims that his former employer Indochino Apparel (U.S.), Inc. discriminated against him in violation of Massachusetts law because it terminated his employment on account of his alcohol use disorder. Presently before the Court is Indochino's motion for summary judgment as to Count I (Breach of Contract), Count II (Breach of Implied Covenant of Good Faith and Fair Dealing), Count III (Wrongful Termination), and Count V (Violation of Mass. Gen. Laws ch. 151B) of the complaint. For the reasons explained below, Indochino's motion is GRANTED.

## I. Background and Procedural History

Indochino is a clothing retailer that offers "custom, made-to-measure suits." (Def.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ("Def.'s SUMF") ¶ 1 (dkt. no. 21).) Buscemi began working at Indochino on July 18, 2022, as a "team lead" at Indochino's Newbury Street store in the Back Bay neighborhood of Boston, Massachusetts.[1] (Id. ¶ 5.) In that role,

[1] The dates set forth in the defendant's Local Rule 56.1 statement appear to contain several typographical errors. For example, according to the statement, Buscemi "rejoined Indochino on

Buscemi interacted directly with patrons of the Newbury Street store, and his duties included taking suit measurements, coordinating client orders with Indochino tailors, and overseeing the delivery of completed garments. Indochino also provided Buscemi with a key with which he could open and close the Newbury Street store.

Buscemi "suffer[s] from alcohol use disorder." (Aff. of C. Buscemi in Supp. of His Opp'n to Def.'s Summ. J. Mot. ¶ 2 (dkt. no. 26–1).) Relevant here, Indochino employees are subject to a Drug and Alcohol Policy. Under that policy, "[e]mployees who are impaired and who fail to attend a scheduled shift without valid excuse and prompt notice may be subject to disciplinary action up to and including termination, with failure to attend with no notification ('no call/no show') being more serious." (Pl.'s Resp. to Def.'s Statement of Undis[p]uted Facts in Supp. of Its Summ. J. Mot. ("Pl.'s Resp.") ¶ 4 (dkt. no. 26).) The policy further provides that an employee who fails to attend a scheduled shift without a "valid excuse" cannot avoid discipline "by a request at that time for rehabilitation, or disclosure that the individual is already involved in treatment." (Id.)

The parties agree that Buscemi was "sober when he started working at Indochino" in July 2022. (Pl.'s Resp. ¶ 11.) Later, in September of 2022, Buscemi "relapsed." (Id.) In October 2022, Buscemi disclosed to an Indochino general manager that he intended to seek treatment for alcohol use disorder. On October 5, 2022, Buscemi "checked in to Recovery Centers of America" in

---

April 23, 20**24**," but the underlying record evidence cited confirms that the operative date was April 23, 20**23**. (Compare Def.'s SUMF ¶ 19 (dkt. no. 21) ("Plaintiff rejoined Indochino on April 23, 2024."), with Decl. of S. Melnick, Ex. 7 at 1 ("Offer of Full-Time Employment" letter dated April 23, 2023) (dkt. no. 22–1).) Paragraphs twelve and thirteen of the statement evince a similar discrepancy. (Compare Def.'s SUMF ¶ 12 ("Plaintiff told the Indochino store General Manager that he was going to detox in October 20**23**."), with id. ¶ 13 ("Plaintiff checked in to Recovery Centers of America in Danvers on October 5, 20**22**.")). In each instance, the Court references the date as it appears in the underlying record materials cited, which is possible because the defendants have complied with Local Rule 56's requirement that such statements contain "page references to affidavits, depositions and other documentation." L.R. 56.1.

Danvers, Massachusetts. (Id. ¶ 13.) Indochino, in turn, allowed Buscemi "time off to attend detox." (Id. ¶ 14.) Buscemi eventually returned to Indochino later that month.

On several occasions in May 2023, Buscemi again "relapsed" and sought "detox" treatment. (See id. ¶¶ 22, 24–27.) Buscemi informed Indochino that he was seeking and undergoing such treatment, (id. ¶ 23), and Indochino again "allowed Plaintiff to return to work on May 22, 2023," (id. ¶ 28). Buscemi did not report to work on several occasions in June 2023 "because of his drinking." (Id. ¶ 31.) In light of this conduct, on June 12, 2023, Indochino decided to issue Buscemi a "Final Written Warning," which would be delivered to him on "his next day at work." (Id. ¶ 33.) On June 13, 2023, Buscemi "checked in to The Gavin Foundation for rehab" and checked out of that facility on June 15, 2023. (Id. ¶¶ 34, 35.) Upon returning to work the next day, June 16, 2023, Buscemi received and signed a copy of the final written warning, a copy of which appears in the summary judgment record. The warning states, in relevant part:

> Consequences of further policy violations, including any incidents related to alcohol or substance abuse in the workplace, may result in immediate termination of your employment. It is vital that you understand the gravity of this situation and take the necessary steps to rectify your behavior moving forward.

(Decl. of S. Melnick, Ex. 12 at 49 (dkt. no. 22–1).)

On July 3, 2023, Buscemi informed another Indochino employee that Buscemi "had been drinking the night before." (Pl.'s Resp. ¶ 40.) In addition, two employees who had worked with Buscemi at the Newburry Street store on July 4 and 5, 2023, reported to Buscemi's superiors that Buscemi appeared to be "moving and talking slowly" during his shift and that he "had taken a nap at the store." (Id. ¶ 45.) Buscemi "called out" on July 7, 2023. (Id. ¶ 48.) He then did not report for his shift on July 10, 2023. On the morning of July 10, Buscemi sent a text message to an Indochino manager, which read "[p]uking all morning feels like it just got worse. Considering the hospital[.]" (Id. ¶ 50.) Buscemi was scheduled to work on July 11 and 12, 2023, but he did not report for either

shift—though the parties dispute whether Buscemi had called Indochino managers in advance of his absences on those occasions. Indochino terminated Buscemi "for violating the final written warning and job abandonment, effective July 13, 2023." (Def.'s SUMF ¶ 54.)

In response, Buscemi commenced this action against his former employer, claiming that Indochino violated Massachusetts anti-discrimination laws by terminating his employment because of his alcohol use disorder. Buscemi further contends that Indochino violated Massachusetts contract law by failing to pay him certain wages allegedly owing at the time of his termination. Indochino now moves for summary judgment as to all but one of the claims asserted in the complaint. In the main, Indochino argues that Buscemi's wrongful termination claim is preempted by his discrimination claim. Further, it contends that Buscemi's common law contract claims fail as a matter of law because any right that Buscemi may possess to receive allegedly unpaid wages at the time of his termination is necessarily created by statute, not by an agreement between the parties. Finally, Indochino contends that Buscemi's claim under Chapter 151B fails as a matter of law because he is not a qualified handicapped person under that statute. The undisputed summary judgment record indicates that Indochino has terminated one employee in Maryland for "poor attendance" and another in Pennsylvania for "job abandonment" because of a "no-call no-show." (Pl.'s Resp. ¶ 57.) Neither employee "had any known drug or alcohol problems." (Id.)

## II. Discussion

### A. Common Law Claims

#### *i. Wrongful Termination*

The gravamen of Count III, the wrongful termination claim, is that Indochino terminated Buscemi "[i]n discrimination and retaliation for his [alcohol use disorder]." (Compl. ¶ 50 (dkt. no.

1–1).) To succeed on a claim for wrongful termination, an at-will employee such as Buscemi must demonstrate that he was "terminated for a reason that violates a clearly established public policy." Upton v. JWP Businessland, 682 N.E.2d 1357, 1358 (Mass. 1997) (collecting cases). "[T]he rationale for implying a private remedy under the 'public policy exception' to the traditional rule governing at-will employment contracts is that, unless a remedy is recognized, there is no other way to vindicate such a public policy." Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 46 (1st Cir. 1999) (quoting Melley v. Gillette Corp., 475 N.E.2d 1227, 1228 (Mass. App. Ct. 1985)). Thus, "a plaintiff generally cannot bring a claim for unlawful termination in violation of public policy where another remedial scheme addresses the policy underlying the claim." Boyd-Perry v. Marblehead Pub. Schs., No. 1:24-CV-10606-IT, 2025 WL 27535, at *4 (D. Mass. Jan. 3, 2025).

Relevant here, "Chapter 151B provides a detailed framework to protect the citizens of the Commonwealth against employment discrimination." Charland v. Muzi Motors, Inc., 631 N.E.2d 555, 557 (Mass. 1994). Again, Count III asserts that Indochino "discriminat[ed]" and "retaliat[ed]" against Buscemi by terminating his employment because of his alcohol use disorder. (Compl. ¶ 50.) Thus, as alleged, Count III plainly invokes the public policy expressly protected by Chapter 151B—namely, protection from employment discrimination. Moreover, that claim is indistinguishable from Count V, which alleges that Indochino violated Chapter 151B by "retaliat[ing]" and "discriminat[ing] against Buscemi due to treatment of his alcohol use disorder." (Id. ¶¶ 56–57.) Because Chapter 151B provides Buscemi a cause of action to seek redress for alleged discrimination, Count III, the common law claim, fails as a matter of law. Cf. Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996) ("Insofar as the plaintiff's common law claims are merely recast versions of her sexual harassment claims under c. 151B, they are barred by that statute's exclusivity provision.").

*ii. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing*

Indochino next argues that it is entitled to summary judgment as to Count I (breach of contract) and Count II (breach of implied covenant) because, in its view, the right that Buscemi invokes—namely, the right to receive any unpaid wages at the time of his termination—"is created by statute" not by "any contract with Indochino that stated when he would be paid his final wages." (Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 11 (dkt. no. 20).) Therefore, the argument runs, Buscemi's contract claims simply seek to enforce the statutory right that Buscemi invokes by asserting his Wage Act claim, Count IV. Buscemi does not dispute that the offer letter he received from Indochino does not specify when he would receive any unpaid wages after his employment terminated. At the same time, he has failed to meaningfully develop a factual or legal argument in opposition to Indochino's motion, and he has failed to otherwise adduce an evidentiary basis to support a necessary element of his contract claims: he does not identify what specific agreement or provision he relies on as the source of the contractual right he claims. See, e.g., Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007) (explaining that plaintiff in breach-of-contract suit "must prove," *inter alia*, "that a valid, binding contract existed" and that "the defendant breached the terms of the contract"). Indochino is entitled to summary judgment on Counts I and II.

B. Chapter 151B Claim

Under Massachusetts law, "a handicapped employee who engages in egregious misconduct, sufficiently inimical to the interests of his employer that it would result in the termination of a nonhandicapped employee, is not a qualified handicapped person within the meaning of G.L. c. 151B." Mammone v. President & Fellows of Harvard Coll., 847 N.E.2d 276,

292 (Mass. 2006). Put another way, "[h]andicapped individuals must obey the same rules of conduct as other employees, and 'when a handicapped person engages in misconduct that makes him or her unable to perform the essential functions of the job, the person is not a qualified handicapped individual.'" Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 271 (D. Mass. 2011) (quoting LaRosa v. United Parcel Serv., Inc., 23 F. Supp. 2d 136, 146 (D. Mass. 1998)).

Here, Indochino argues that Buscemi is not a "qualified handicapped person" under Chapter 151B because he engaged in conduct significantly inimical to the interests of Indochino. In so arguing, Indochino relies on evidence in the summary judgment record—which Buscemi does not seriously dispute—that Buscemi accrued several unexcused absences. Moreover, the parties do not dispute that Indochino has terminated at least two other non-handicapped employees for attendance-related issues. Therefore, according to Indochino, in light of Buscemi's "persistent performance and attendance problems," he is not a "qualified handicapped person" under Chapter 151B. (Def.'s Mem. at 6.)

The Court concurs. After all, "[n]othing in c. 151B suggests a legislative intent that a lower standard of qualifying conduct should apply to handicapped employees than applies to those without handicap." See Garrity v. United Airlines, Inc., 653 N.E.2d 173, 178 (Mass. 1995). What is more, even if the Court were to accept Buscemi's account of the events leading to his termination—which account finds little support in the summary judgment record—the same result obtains. That is, even assuming *arguendo* that Buscemi did in fact request an accommodation for time off on July 10–12, 2023—the dates of the shifts he missed after receiving the final written warning—Indochino was not required to give Buscemi additional leave to seek treatment. Indochino had given Buscemi leave on several occasions in the past, yet his attendance problems, among other apparent performance issues, persisted. Given these past opportunities to seek

treatment and Buscemi's persisting attendance issues, Indochino was not obligated "to retain [him] through a succession of efforts" at recovery. See Evans v. Fed. Exp. Corp., 133 F.3d 137, 140 (1st Cir. 1998) (holding, *inter alia*, that employer did not violate Chapter 151B by denying employee's request for "second leave of absence for substance abuse" treatment); cf. Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 91 (1st Cir. 2012) (adjudicating failure-to-accommodate claim and explaining that employer may rely on "past experience" when deciding whether to grant requested accommodation).

In short, the summary judgment record indicates that: (1) on several occasions Indochino granted Buscemi time off to seek treatment for his alcohol use disorder; (2) Buscemi's attendance issues nevertheless persisted; and, (3) Indochino has terminated at least two non-handicapped employees for similar conduct related to poor attendance. Indochino is thus entitled to summary judgment as to Count V.

## III. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. Accordingly, only Count IV remains.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge